**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ALMONDNET, INC. and INTENT IQ, LLC, | |
| Plaintiffs, | Case No. |
| v. | **JURY TRIAL DEMANDED** |
| LINKEDIN CORPORATION, | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT AGAINST
<u>LINKEDIN CORPORATION</u>**

     This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiffs AlmondNet, Inc. and Intent IQ, LLC (collectively, "Plaintiff" or "AlmondNet") make the following allegations against Defendant LinkedIn Corporation ("Defendant" or "LinkedIn"):

<u>**INTRODUCTION AND PARTIES**</u>

     1.     This complaint arises from Defendant's unlawful infringement of the following United States patents owned by AlmondNet, each of which generally relate to novel internet / network based advertising systems and methods: United States Patent Nos. 8,244,582, 7,979,307, 8,775,249, 7,822,639, 8,244,586, 8,671,139, 8,959,146, 8,677,398, and 10,715,878 (collectively, the "Asserted Patents"). AlmondNet owns all right, title, and interest in each of the Asserted Patents to file this case.

     2.     AlmondNet, Inc. is a corporation organized and existing under the laws of the state of Delaware, having its place of business at 37-18 Northern Blvd. Suite 404, Long Island City, NY, 11101. Intent IQ, LLC is a Delaware limited liability company, having its place of business

at 37-18 Northern Blvd. Suite 404, Long Island City, NY, 11101. AlmondNet, Inc. and Intent IQ, LLC are collectively referred herein as "AlmondNet." Established in 1998, AlmondNet is an industry leader and pioneer in privacy-friendly, targeted advertising. AlmondNet has developed an extensive suite of industry-leading targeted advertising solutions and products, is focused on R&D and the licensing of its extensive portfolio of enabling technology and intellectual property covering numerous areas of the targeting landscape and ecosystem, including profile based bidding, behavioral targeting, online and offline data monetization, addressable advertising, and multi-platform advertising.

3.    On information and belief,  Defendant is a Delaware corporation with a principal place of business at 1000 West Maude Avenue Sunnyvale, California 94085. Defendant may be served with process through its registered agent, the Corporation Service Company, at 251 Little Falls Drive Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

4.    This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.    This Court has personal jurisdiction over Defendant in this action because Defendant is incorporated under the laws of the state of Delaware, has committed acts within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products and services that infringe the Asserted Patents.

6.     Venue is proper in this District because Defendant is incorporated under the laws of the State of Delaware.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,244,582

7.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

8.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,244,582, titled "method and stored program for accumulating descriptive profile data along with source information for use in targeting third-party advertisements," issued on August 14, 2012 ("the '582 patent"). A true and correct copy of the '582 patent is attached as Exhibit 1.

9.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products and/or services ("Accused Instrumentalities"), such as, e.g., LinkedIn Ads and/or the LinkedIn Audience Network, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '582 patent.

10.     The infringement of the '582 patent is also attributable to Defendant. Defendant and/or users of the Accused Instrumentalities directs and controls use of the Accused Instrumentalities to perform acts that result in infringement the '582 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

11.     The Accused Instrumentalities satisfy all claim limitations of claims of the '582 patent. A claim chart comparing an independent claim of the '582 patent to a representative Accused Instrumentalities is attached as Exhibit 2, which is hereby incorporated by reference in its entirety.

12.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendant has injured AlmondNet and is liable for infringement of the '582 patent pursuant to 35 U.S.C. § 271.

13.     As a result of Defendant's infringement of the '582 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 7,979,307

14.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

15.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 7,979,307, titled "method and stored program for accumulating descriptive profile data along with source information for use in targeting third-party advertisements," issued on July 12, 2011 ("the '307 patent"). A true and correct copy of the '307 patent is attached as Exhibit 3.

16.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products and/or services ("Accused Instrumentalities"), such as, e.g., LinkedIn Ads and/or the LinkedIn Audience Network, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '307 patent.

17.     The infringement of the '307 patent is also attributable to Defendant. Defendant and/or users of the Accused Instrumentalities directs and controls use of the Accused Instrumentalities to perform acts that result in infringement the '307 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

4

18.    The Accused Instrumentalities satisfy all claim limitations of claims of the '307 patent. A claim chart comparing an independent claim of the '307 patent to a representative Accused Instrumentalities is attached as Exhibit 4, which is hereby incorporated by reference in its entirety.

19.    By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendant has injured AlmondNet and is liable for infringement of the '307 patent pursuant to 35 U.S.C. § 271.

20.    As a result of Defendant's infringement of the '307 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,775,249

21.    AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

22.    AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,775,249, titled "method, computer system, and stored program for accumulating descriptive profile data along with source information for use in targeting third-party advertisements," issued on July 8, 2014 ("the '249 patent"). A true and correct copy of the '249 patent is attached as Exhibit 5.

23.    On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products and/or services ("Accused Instrumentalities"), such as, e.g., LinkedIn Ads and/or the LinkedIn Audience Network, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '249 patent.

24.     The infringement of the '249 patent is also attributable to Defendant. Defendant and/or users of the Accused Instrumentalities directs and controls use of the Accused Instrumentalities to perform acts that result in infringement the '249 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

25.     The Accused Instrumentalities satisfy all claim limitations of claims of the '249 patent. A claim chart comparing an independent claim of the '249 patent to a representative Accused Instrumentalities is attached as Exhibit 6, which is hereby incorporated by reference in its entirety.

26.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendant has injured AlmondNet and is liable for infringement of the '249 patent pursuant to 35 U.S.C. § 271.

27.     As a result of Defendant's infringement of the '249 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 7,822,639

28.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

29.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 7,822,639, titled "added-revenue off-site targeted internet advertising," issued on October 26, 2010 ("the '639 patent"). A true and correct copy of the '639 patent is attached as Exhibit 7.

30.    On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products and/or services ("Accused Instrumentalities"), such as, e.g., LinkedIn Ads and/or the LinkedIn Audience Network, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '639 patent.

31.    The infringement of the '639 patent is also attributable to Defendant. Defendant and/or users of the Accused Instrumentalities directs and controls use of the Accused Instrumentalities to perform acts that result in infringement the '639 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

32.    The Accused Instrumentalities satisfy all claim limitations of claims of the '639 patent. A claim chart comparing an independent claim of the '639 patent to a representative Accused Instrumentalities is attached as Exhibit 8, which is hereby incorporated by reference in its entirety.

33.    By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendant has injured AlmondNet and is liable for infringement of the '639 patent pursuant to 35 U.S.C. § 271.

34.    As a result of Defendant's infringement of the '639 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT V

## INFRINGEMENT OF U.S. PATENT NO. 8,244,586

35.    AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

36.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,244,586, titled "computerized systems for added-revenue off-site targeted internet advertising," issued on August 14, 2012 ("the '586 patent"). A true and correct copy of the '586 patent is attached as Exhibit 9.

37.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products and/or services ("Accused Instrumentalities"), such as, e.g., LinkedIn Ads and/or the LinkedIn Audience Network, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '586 patent.

38.     The infringement of the '586 patent is also attributable to Defendant. Defendant and/or users of the Accused Instrumentalities directs and controls use of the Accused Instrumentalities to perform acts that result in infringement the '586 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

39.     The Accused Instrumentalities satisfy all claim limitations of claims of the '586 patent. A claim chart comparing an independent claim of the '586 patent to a representative Accused Instrumentalities is attached as Exhibit 10, which is hereby incorporated by reference in its entirety.

40.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendant has injured AlmondNet and is liable for infringement of the '586 patent pursuant to 35 U.S.C. § 271.

41.     As a result of Defendant's infringement of the '586 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

**COUNT VI**

## INFRINGEMENT OF U.S. PATENT NO. 8,671,139

42.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

43.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,671,139, titled "media properties selection method and system based on expected profit from profile-based ad delivery," issued on March 11, 2014 ("the '139 patent"). A true and correct copy of the '139 patent is attached as Exhibit 11.

44.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products and/or services ("Accused Instrumentalities"), such as, e.g., LinkedIn Ads and/or the LinkedIn Audience Network, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '139 patent.

45.     The infringement of the '139 patent is also attributable to Defendant. Defendant and/or users of the Accused Instrumentalities directs and controls use of the Accused Instrumentalities to perform acts that result in infringement the '139 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

46.     Defendant's infringement has been and is willful. Defendant knew of, or was willfully blind to, the '139 patent and that the Accused Instrumentalities infringed it long before this suit was filed. For example, on August 27, 2021, AlmondNet filed *AlmondNet, Inc. et al. v. Microsoft Corp.*, Case No. 6:21-cv-00897 (W.D. Tex. 2021), alleging infringement (against LinkedIn's parent company) of the '139 patent. On February 18, 2022, AlmondNet served its First Amended Disclosure of Preliminary Infringement Contentions against Microsoft, which listed "LinkedIn Ads" as a product infringing the '139 Patent. On April 27, 2022, AlmondNet served its venue discovery requests, defining the Accused Products as "the categories of products identified

in . . . any infringement contentions or supplemental infringement contentions served on [Microsoft]." Indeed, in May 3, 2022, correspondence to AlmondNet, counsel for Microsoft indicated that "Defendant Microsoft Corporation, however, does not offer for sale or operate 'LinkedIn Ads.' LinkedIn is a separate and distinct entity. Therefore, Microsoft does not control and is not responsible for LinkedIn's products. Accordingly, Microsoft objects to any and all requests seeking discovery relating to Linked Ads or LinkedIn generally." Despite LinkedIn's knowledge of or willful blindness to the '139 patent and AlmondNet's allegations of infringement as a result of the filing of the complaint in Case No. 6:21-cv-00897 (W.D. Tex.) as well as the inclusion of LinkedIn Ads in the infringement contentions served on Defendant's parent corporation in that case, Defendant continued and still continues to infringe the '139 patent. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '139 patent. Accordingly, Defendant is liable for willful infringement.

47.     Defendant also knowingly and intentionally induces infringement of claims of the '139 patent in violation of 35 U.S.C. § 271(b). As detailed above, Defendant has had knowledge of, or was willfully blind to, the '139 patent and the infringing nature of the Accused Instrumentalities before this suit was filed. Despite this knowledge of or willful blindness to the '139 patent as a result of the filing of the complaint in Case No. 6:21-cv-00897 (W.D. Tex.) as well as the inclusion of LinkedIn Ads in the infringement contentions for that case, Defendant continued and still continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Instrumentalities in ways that directly infringe the '139 patent. Defendant did and does so intending that its customers and end users will commit these infringing acts. Defendant also continued and continues to make, use, offer for sale, sell, and/or import the Accused

Instrumentalities, despite its knowledge of the '139 patent, thereby specifically intending for and inducing its customers to infringe the '139 patent through the customers' normal and customary use of the Accused Instrumentalities.

48.     Defendant has also infringed, and continues to infringe, claims of the '139 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant has knowledge of or is willfully blind to the components in the Accused Instrumentalities being especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '139 patent, in violation of 35 U.S.C. § 271(c).

49.     The Accused Instrumentalities satisfy all claim limitations of claims of the '139 patent. A claim chart comparing an independent claim of the '139 patent to a representative Accused Instrumentalities is attached as Exhibit 12, which is hereby incorporated by reference in its entirety.

50.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendant has injured AlmondNet and is liable for infringement of the '139 patent pursuant to 35 U.S.C. § 271.

51.     As a result of Defendant's infringement of the '139 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

**COUNT VII**

## INFRINGEMENT OF U.S. PATENT NO. 8,959,146

52.    AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

53.    AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,959,146, titled "media properties selection method and system based on expected profit from profile-based ad delivery," issued on February 17, 2015 ("the '146 patent"). A true and correct copy of the '146 patent is attached as Exhibit 13.

54.    On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products and/or services ("Accused Instrumentalities"), such as, e.g., LinkedIn Ads and/or the LinkedIn Audience Network, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '146 patent.

55.    The infringement of the '146 patent is also attributable to Defendant. Defendant and/or users of the Accused Instrumentalities directs and controls use of the Accused Instrumentalities to perform acts that result in infringement the '146 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

56.    Defendant's infringement has been and is willful. Defendant knew of, or was willfully blind to, the '146 patent and that the Accused Instrumentalities infringed it long before this suit was filed. For example, on August 27, 2021, AlmondNet filed *AlmondNet, Inc. et al. v. Microsoft Corp.*, Case No. 6:21-cv-00897 (W.D. Tex. 2021), alleging infringement (against LinkedIn's parent company) of the '139 patent (which is a continuation of the '146 patent—*see* Exhibit 11 at Related U.S. Application Data). On February 18, 2022, AlmondNet served its First Amended Disclosure of Preliminary Infringement Contentions against Microsoft, which listed "LinkedIn Ads" as one of the products infringing the '139 patent (which is the parent of the '146

patent). On April 27, 2022, AlmondNet served its venue discovery requests, defining the Accused Products as "the categories of products identified in . . . any infringement contentions or supplemental infringement contentions served on [Microsoft]." Indeed, in May 3, 2022, correspondence to AlmondNet, counsel for Microsoft indicated that "Defendant Microsoft Corporation, however, does not offer for sale or operate 'LinkedIn Ads.' LinkedIn is a separate and distinct entity. Therefore, Microsoft does not control and is not responsible for LinkedIn's products. Accordingly, Microsoft objects to any and all requests seeking discovery relating to Linked Ads or LinkedIn generally." Despite LinkedIn's knowledge of or willful blindness to the '146 patent and AlmondNet's allegations of infringement as a result of the filing of the complaint in Case No. 6:21-cv-00897 (W.D. Tex.) as well as the inclusion of LinkedIn Ads in the infringement contentions for that case, Defendant continued and still continues to infringe the '146 patent. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '146 patent. Accordingly, Defendant is liable for willful infringement.

57.    Defendant also knowingly and intentionally induces infringement of claims of the '146 patent in violation of 35 U.S.C. § 271(b). As detailed above, Defendant has had knowledge of, or was willfully blind to, the '146 patent and the infringing nature of the Accused Instrumentalities before this suit was filed. Despite this knowledge of or willful blindness to the '146 patent as a result of the filing of the complaint in Case No. 6:21-cv-00897 (W.D. Tex.) as well as the inclusion of LinkedIn Ads in the infringement contentions for that case, Defendant continued and still continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Instrumentalities in ways that directly infringe the '146 patent. Defendant did and does so intending that its customers and end users will commit these infringing acts. Defendant also

continued and continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '146 patent, thereby specifically intending for and inducing its customers to infringe the '146 patent through the customers' normal and customary use of the Accused Instrumentalities.

58.     Defendant has also infringed, and continues to infringe, claims of the '146 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant has knowledge of or is willfully blind to the components in the Accused Instrumentalities being especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '146 patent, in violation of 35 U.S.C. § 271(c).

59.     The Accused Instrumentalities satisfy all claim limitations of claims of the '146 patent. A claim chart comparing an independent claim of the '146 patent to a representative Accused Instrumentalities is attached as Exhibit 14, which is hereby incorporated by reference in its entirety.

60.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendant has injured AlmondNet and is liable for infringement of the '146 patent pursuant to 35 U.S.C. § 271.

61.     As a result of Defendant's infringement of the '146 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT VIII

## INFRINGEMENT OF U.S. PATENT NO. 8,677,398

62.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

63.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,677,398, titled "systems and methods for taking action with respect to one network-connected device based on activity on another device connected to the same network," issued on March 18, 2014 ("the '398 patent"). A true and correct copy of the '398 patent is attached as Exhibit 15.

64.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products and/or services ("Accused Instrumentalities"), such as, e.g., LinkedIn Ads and/or the LinkedIn Audience Network, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '398 patent.

65.     The infringement of the '398 patent is also attributable to Defendant. Defendant and/or users of the Accused Instrumentalities directs and controls use of the Accused Instrumentalities to perform acts that result in infringement the '398 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

66.     Defendant's infringement has been and is willful. Defendant knew of, or was willfully blind to, the '398 patent and that the Accused Instrumentalities infringed it long before this suit was filed. For example, on August 27, 2021, AlmondNet filed *AlmondNet, Inc. et al. v. Microsoft Corp.*, Case No. 6:21-cv-00897 (W.D. Tex. 2021), alleging infringement (against LinkedIn's parent company) of the '398 patent. On February 18, 2022, AlmondNet served its First Amended Disclosure of Preliminary Infringement Contentions against Microsoft, which listed "LinkedIn Ads" as a product infringing the '398 patent. On April 27, 2022, AlmondNet served its

venue discovery requests, defining the Accused Products as "the categories of products identified in . . . any infringement contentions or supplemental infringement contentions served on [Microsoft]." Indeed, in May 3, 2022, correspondence to AlmondNet, counsel for Microsoft indicated that "Defendant Microsoft Corporation, however, does not offer for sale or operate 'LinkedIn Ads.' LinkedIn is a separate and distinct entity. Therefore, Microsoft does not control and is not responsible for LinkedIn's products. Accordingly, Microsoft objects to any and all requests seeking discovery relating to Linked Ads or LinkedIn generally." Despite LinkedIn's knowledge of or willful blindness to the '398 patent and AlmondNet's allegations of infringement as a result of the filing of the complaint in Case No. 6:21-cv-00897 (W.D. Tex.) as well as the inclusion of LinkedIn Ads in the infringement contentions served on Defendant's parent corporation in that case, Defendant continued and still continues to infringe the '398 patent. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '398 patent. Accordingly, Defendant is liable for willful infringement.

67.     Defendant also knowingly and intentionally induces infringement of claims of the '398 patent in violation of 35 U.S.C. § 271(b). As detailed above, Defendant has had knowledge of, or was willfully blind to, the '398 patent and the infringing nature of the Accused Instrumentalities before this suit was filed. Despite this knowledge of or willful blindness to the '398 patent as a result of the filing of the complaint in Case No. 6:21-cv-00897 (W.D. Tex.) as well as the inclusion of LinkedIn Ads in the infringement contentions for that case, Defendant continued and still continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Instrumentalities in ways that directly infringe the '398 patent. Defendant did and does so intending that its customers and end users will commit these infringing acts. Defendant also

continued and continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '398 patent, thereby specifically intending for and inducing its customers to infringe the '398 patent through the customers' normal and customary use of the Accused Instrumentalities.

68.     Defendant has also infringed, and continues to infringe, claims of the '398 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant has knowledge of or is willfully blind to the components in the Accused Instrumentalities being especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '398 patent, in violation of 35 U.S.C. § 271(c).

69.     The Accused Instrumentalities satisfy all claim limitations of claims of the '398 patent. A claim chart comparing an independent claim of the '398 patent to a representative Accused Instrumentalities is attached as Exhibit 16, which is hereby incorporated by reference in its entirety.

70.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendant has injured AlmondNet and is liable for infringement of the '398 patent pursuant to 35 U.S.C. § 271.

71.     As a result of Defendant's infringement of the '398 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT IX

## INFRINGEMENT OF U.S. PATENT NO. 10,715,878

72.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

73.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 10,715,878, titled "targeted television advertisements based on online behavior," issued on July 14, 2020 ("the '878 patent"). A true and correct copy of the '878 patent is attached as Exhibit 17.

74.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products and/or services ("Accused Instrumentalities"), such as, e.g., LinkedIn Ads and/or the LinkedIn Audience Network, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '878 patent.

75.     The infringement of the '878 patent is also attributable to Defendant. Defendant and/or users of the Accused Instrumentalities directs and controls use of the Accused Instrumentalities to perform acts that result in infringement the '878 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

76.     Defendant's infringement has been and is willful. Defendant knew of, or was willfully blind to, the '878 patent and that the Accused Instrumentalities infringed it long before this suit was filed. For example, on August 27, 2021, AlmondNet filed *AlmondNet, Inc. et al. v. Microsoft Corp.*, Case No. 6:21-cv-00897 (W.D. Tex. 2021), alleging infringement (against LinkedIn's parent company) of the '398 patent (which is in the same patent family as the '878 patent, as both patents relate to U.S. Patent Nos. 7,861,260 and 8,281,336—*see* Exhibits 13 and 15 at Related U.S. Application Data). On February 18, 2022, AlmondNet served its First Amended Disclosure of Preliminary Infringement Contentions against Microsoft, including "LinkedIn Ads"

as one of the products infringing the '398 patent (which is in the same patent family as the '878 patent). On April 27, 2022, AlmondNet served its venue discovery requests, defining the Accused Products as "the categories of products identified in . . . any infringement contentions or supplemental infringement contentions served on [Microsoft]." Indeed, in May 3, 2022, correspondence to AlmondNet, counsel for Microsoft indicated that "Defendant Microsoft Corporation, however, does not offer for sale or operate 'LinkedIn Ads.' LinkedIn is a separate and distinct entity. Therefore, Microsoft does not control and is not responsible for LinkedIn's products. Accordingly, Microsoft objects to any and all requests seeking discovery relating to Linked Ads or LinkedIn generally." Despite LinkedIn's knowledge of or willful blindness to the '878 patent and AlmondNet's allegations of infringement as a result of the filing of the complaint in Case No. 6:21-cv-00897 (W.D. Tex.) as well as the inclusion of LinkedIn Ads in the infringement contentions served on Defendant's parent corporation in that case, Defendant continued and still continues to infringe the '878 patent. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '878 patent. Accordingly, Defendant is liable for willful infringement.

77.     Defendant also knowingly and intentionally induces infringement of claims of the '878 patent in violation of 35 U.S.C. § 271(b). As detailed above, Defendant has had knowledge of, or was willfully blind to, the '878 patent and the infringing nature of the Accused Instrumentalities before this suit was filed. Despite this knowledge of or willful blindness to the '878 patent as a result of the filing of the complaint in Case No. 6:21-cv-00897 (W.D. Tex.) as well as the inclusion of LinkedIn Ads in the infringement contentions for that case, Defendant continued and still continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused

Instrumentalities in ways that directly infringe the '878 patent. Defendant did and does so intending that its customers and end users will commit these infringing acts. Defendant also continued and continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '878 patent, thereby specifically intending for and inducing its customers to infringe the '878 patent through the customers' normal and customary use of the Accused Instrumentalities.

78.     Defendant has also infringed, and continues to infringe, claims of the '878 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant has knowledge of or is willfully blind to the components in the Accused Instrumentalities being especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '878 patent, in violation of 35 U.S.C. § 271(c).

79.     The Accused Instrumentalities satisfy all claim limitations of claims of the '878 patent. A claim chart comparing an independent claim of the '878 patent to a representative Accused Instrumentalities is attached as Exhibit 18, which is hereby incorporated by reference in its entirety.

80.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendant has injured AlmondNet and is liable for infringement of the '878 patent pursuant to 35 U.S.C. § 271.

81.     As a result of Defendant's infringement of the '878 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in

no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## PRAYER FOR RELIEF

WHEREFORE, AlmondNet respectfully requests that this Court enter:

a.   A judgment in favor of AlmondNet that Defendant has infringed, either literally and/or under the doctrine of equivalents, each of the Asserted Patents;

b.   A judgment in favor of Plaintiff that Defendant has willfully infringed the '139, '146, '398, and '878 patents Asserted Patents;

c.   A permanent injunction prohibiting Defendant from further acts of infringement of the '139, '146, '398, and '878 patents;

d.   A judgment and order requiring Defendant to pay AlmondNet its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the Asserted Patents;

e.   A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to AlmondNet, including without limitation, pre-judgment and post-judgment interest;

f.   A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to AlmondNet its reasonable attorneys' fees against Defendant; and

g.   Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

AlmondNet, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury

of any issues so triable by right.

Dated: December 1, 2023                          Respectfully submitted,

Of Counsel:                                      FARNAN LLP

Reza Mirzaie                                     */s/ Michael J. Farnan*
Ben Wang                                         Brian E. Farnan (Bar No. 4089)
James Milkey                                     Michael J. Farnan (Bar No. 5165)
Amy Hayden                                       919 North Market Street, 12th Floor
James Tsuei                                      Wilmington, DE 19801
Daniel Kolko                                     (302) 777-0300
Jason Wietholter                                 bfarnan@farnanlaw.com
RUSS AUGUST & KABAT                              mfarnan@farnanlaw.com
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025                    *Attorneys for Plaintiffs AlmondNet, Inc. and*
Tel: 310-826-7474                                *Intent IQ, LLC*
Fax: 310-826-6991
rmirzaie@raklaw.com
bwang@raklaw.com
jmilkey@raklaw.com
ahayden@raklaw.com
jtsuei@raklaw.com
dkolko@raklaw.com
jwietholter@raklaw.com